# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TISHIA A. HARLAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 13-CV-672-PJC |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

# OPINION AND ORDER

Plaintiff, Tishia A. Harlan ("Harlan"), pursuant to 42 U.S.C. § 405(g), requests judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying Harlan's applications for disability insurance benefits and for widow's benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. In accordance with 28 U.S.C. § 636(c)(1) and (3), the parties have consented to proceed before a United States Magistrate Judge. Any appeal of this order will be taken directly to the Tenth Circuit Court of Appeals. Harlan appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Harlan was not disabled. For the reasons discussed below, the Court **REVERSES AND REMANDS** the Commissioner's decision.

**Claimant's Background**[1]

Harlan was 52 years old at the time of the hearing before the ALJ on March 9, 2012. (R. 32). She had completed the tenth grade and obtained a GED. (R. 32-33). Her longest employment had been as a carhop at a fast food restaurant, and she quit due to difficulty walking. (R. 39, 47-49). Harlan had also worked part-time driving a school bus and taking care of children at a day care center. (R. 39, 47)

Harlan testified that she experienced severe and constant pain in her low back that radiated down her legs. (R. 34-35). She described the pain as sharp and stabbing. (R. 35). She occasionally experienced a tingling sensation in her feet. (R. 34). Following the results of an MRI in 2010, her doctor told her that there was nothing that could be done for her surgically. (R. 35). Steroid injections were not an option for Harlan due to past severe reactions to steroids and prednisone. (R. 35, 37).

At the time of the hearing, Harlan was taking thyroid medication, pain medication, and a muscle relaxant. (R. 44-46). Pain medications made Harlan sleepy and intensified her depression. *Id.* Harlan testified that she was sensitive and allergic to pain medication. (R. 37). She preferred not to take medications due to the side effects. *Id.*

Harlan's back pain prevented her from walking more than forty or fifty yards. (R. 43). Harlan was unable to walk fast, because she was afraid that her back would give out on her and cause her to fall. (R. 44). She reported an occasion of falling down in the past. (R. 43). She testified that she had learned to sense when she was about to fall down, and she was able to grab

---

[1] Harlan stated in her Opening Brief that she did not dispute the ALJ's mental limitations included in the RFC determination, and therefore the Court is summarizing only the medical evidence related to Harlan's physical impairments that are the subject of her appeal. *See* Plaintiff's Opening Brief, Dkt. #21, p. 2.

onto something first.  *Id.*  She had difficulty walking up stairs.  (R. 44).  She walked up the stairs at church, but rode the elevator down due to fear of falling.  *Id.*  Her pain forced her to change position every ten or fifteen minutes when standing, and about every ten minutes when sitting.  (R. 43-44).  Harlan changed positions frequently during church service, so she tried not to sit close to anyone.  (R. 44).  Bending and squatting increased Harlan's pain.  (R. 39-40, 44).  Harlan tried not to lift too much because it made her "hurt."  (R. 45).  Ten pounds was the most that Harlan felt she could lift.  *Id.*

Harlan testified that she was unable to sleep past 7:00 a.m., because her back hurt from lying in bed.  (R. 41).  Harlan said that she was unable to sleep more than two hours at a time, and she never had a full night's sleep due to her back pain.  (R. 38).  Her activities of daily living included taking care of her dogs, sitting on her couch, and watching television.  (R. 41).  Harlan testified that she watched movies and had dinner with her sister-in-law once a week and attended church.  (R. 42).  She said that she had problems bending over to clean the bathtub or standing at the sink to wash dishes.  (R. 42).  She had difficulty getting out of a car and closing the car door due to pain.  (R. 45).  She was fearful of shopping alone due to her difficulty closing the car door.  *Id.*

Examination notes from Smith Medical Clinic are hand-written and difficult to read, but it appears that March 23, 2010, Harlan complained of low back pain and requested muscle relaxers.  (R. 363).

Harlan was seen by Randall L. Hendricks, M.D., with Central States Orthopedics for an initial evaluation on August 13, 2010.  (R. 387-88, 423-24).  Harlan complained of low back pain and bilateral buttock pain, with pain radiating down her legs.  (R. 387).  She reported that she had experienced back pain since she was seven years old and that it had gotten worse over time.  *Id.*

3

On examination, Harlan had mild restriction of lumbar motion. *Id.* Dr. Hendricks reviewed Harlan's lumbar spine x-rays and noted possible mild spinal stenosis with neurologic impingement. *Id.*

On August 19, 2010, a lumbar spine MRI was performed at the request of Dr. Hendricks. (R. 389-90, 421-22). The results revealed moderate facet arthropathy with mild central canal stenosis and mild foraminal stenosis at L3/L4; a small base central protrusion, facet arthropathy and mild retrolisthesis, and mild foraminal narrowing at L4/L5; a broad-based annular bulging, endplate degenerative changes; and, moderate to severe foraminal stenosis at L5/S1. (R. 421-22). On August 23, 2010, Dr. Hendricks reviewed the results with Harlan and informed her that she had degenerative disc disease at L3/L4, L4/L5, and L5/S1. (R. 386, 420). When Dr. Hendricks told Harlan that nothing could be done for her surgically, she became "very emotional" and tearful. *Id.* He recommended physical therapy, pain medication, and a corset. *Id.*

On September 15. 2010, Harlan saw Dr. Hendricks with complaints of ongoing pain. (R. 385, 418). Dr. Hendricks wrote that he again explained to Harlan that she had multilevel degenerative disk disease that could not be treated surgically. (R. 418). The note stated that Dr. Hendricks would release Harlan to return to work with restrictions noted on a form and that the restrictions were considered temporary. *Id.* Dr. Hendricks completed a restrictions form stating that Harlan could return to work that day, but with no lifting more than 15 pounds, and no prolonged periods of standing for more than 60 minutes without 15 minutes of sitting. (R. 419). He stated that Harlan was permitted to drive a bus, and he checked a box stating that the restrictions were temporary. *Id.*

On October 1, 2010, Harlan was seen at Smith Medical Clinic. (R. 360). The appointment note is difficult to read, but it appears that Harlan's complaints included back pain. *Id.*

Harlan presented to the Claremore Indian Hospital (the "Claremore Clinic") on March 29, 2011 for complaints of back pain. (R. 479-81). She said that she had experienced back pain for several years, and she mentioned her previous diagnosis from Dr. Hendricks of degenerative joint disease. (R. 479). On examination Harlan had tenderness and limited range of motion of her spine. *Id.* Assessments were lumbago and degenerative disc disease of the lumbar spine. *Id.* Harlan was prescribed pain medications and a muscle relaxant. (R. 480). A lumbar spine CT scan completed that day showed mild multilevel degenerative disc disease; moderately severe degenerative facet arthropathy; and L5/S1 spondylosis. (R. 489).

On May 4, 2011, Harlan presented to the Claremore Clinic for evaluation of her back pain and medication refills. (R. 473-74, 521). Diagnoses were chronic low back pain, osteoarthritis of the lumbar spine, and facet arthrosis of the lumbar vertebra. (R 473). She requested and was prescribed diclofenac for pain. *Id.*

Degenerative changes at L5/S1 were noted in abdominal and pelvic CT scans completed May 24, 2011. (486-87, 525-526).

After experiencing continued severe pain in her lower back in 2012, Harlan underwent a CT scan of her lumbar spine at the Claremore Clinic on April 17, 2012. (R. 542-43). The impressions were stable multi-level degenerative disc disease, most prominent at L5/S1; stable severe degenerative facet arthropathy; and multilevel degenerative disc disease with borderline spinal stenosis at L3/L4 due to severe facet arthropathy. (R. 543). Jeanette Ramos-Fast, M.D.,

notified Harlan of the results on May 11, 2011 and advised her to make a follow-up appointment at the Claremore Clinic. (R. 547).

When Harlan returned to the Claremore Clinic on May 25, 2012, she complained of chronic low back pain with pain radiating down her right leg. (R. 540). She described her pain as a burning and pinching sensation. *Id.* She rated her average range of pain as 5 out of 10 and her worst as 10 out of 10. *Id.* Her pain was worse with movement. *Id.* Other than Harlan's occasional use of hydrocodone, nothing relieved the pain. *Id.* She was diagnosed with chronic low back pain; neuroforaminal stenosis mild L5/L6; and somatic dysfunction of the pelvis and sacral areas of the right low back. (R. 541). She received osteopathic manipulation therapy treatment. *Id.* She was prescribed carbamazepine and cyclobenzaprine, and she was instructed to wear a back brace daily. *Id.*

On September 27, 2012, Dr. Ramos-Fast completed a form entitled "Medical Source Statement of Ability to Do Work-Related Activities (Physical)." (R. 549-55). On this form, Dr. Ramos-Fast checked boxes indicating that Harlan could lift and carry less than ten pounds on either an occasional or a frequent basis and could stand or walk for less than two hours in an eight-hour workday. (R. 549). When sitting, Harlan would need to periodically alternate sitting and standing. (R. 553). Dr. Ramos-Fast found that Harlan was limited in reaching, handling, fingering and feeling. (R. 554). Dr. Ramos-Fast found that Harlan was limited to balancing only occasionally and that she could never climb, kneel, crouch, crawl, or stoop. (R. 553). She said that Harlan's pain affected her ability to deal with the public. *Id.* She said that Harlan had multi-level degenerative disc disease with borderline spinal stenosis at L3/L4 due to severe facet arthropathy. (R. 551, 553).

Nonexamining agency consultant Karl K. Boatman, M.D., completed a Physical Residual Functional Capacity Assessment on March 22, 2011. (R. 460-67). Dr. Boatman found that Harlan could do work at the "light" exertional level. (R. 461). For narrative explanation, Dr. Boatman briefly summarized Harlan's August 13, 2010 initial evaluation with Dr. Hendricks and the results of her August 19, 2010 MRI. *Id.* Dr. Boatman also mentioned Dr. Hendricks' temporary restrictions given September 15, 2010. *Id.* For postural limitations, Dr. Boatman said that Harlan could occasionally stoop and could frequently climb, balance, kneel, crouch, and crawl. (R. 462). Dr. Boatman found no manipulative, visual, communicative, or environmental limitations. (R. 463-64).

## Procedural History

Harlan filed her applications for disability insurance benefits and for widow's benefits in October 2010. (R. 116-29). Harlan asserted onset of disability on September 15, 2010. (R. 116). The applications were denied initially and on reconsideration. (R. 62-71, 73-78). An administrative hearing was held before ALJ Lantz McClain on March 9, 2012. (R. 29-53). By decision dated May 16, 2012, the ALJ found that Harlan was not disabled. (R. 13-24). On August 15, 2013, the Appeals Council denied review. (R. 1-7). Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. § 404.981.

## Social Security Law and Standard Of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in

any other kind of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 404.1520.[2] *See also Wall v. Astrue*, 561 F.3d 1048, 1052-53 (10th Cir. 2009) (detailing steps). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Lax*, 489 F.3d at 1084 (citation and quotation omitted).

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted).

Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. *Wall*, 561 F.3d at 1052 (quotations and citations omitted). Although the court will not reweigh the evidence, the court will "meticulously examine the record as a whole,

---

[2] Step One requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 404.1510. Step Two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c). If the claimant is engaged in substantial gainful activity (Step One) or if the claimant's impairment is not medically severe (Step Two), disability benefits are denied. At Step Three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App.1 ("Listings"). A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to Step Four, where the claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's Step Four burden is met, the burden shifts to the Commissioner to establish at Step Five that work exists in significant numbers in the national economy which the claimant, taking into account his age, education, work experience, and RFC, can perform. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. 20 C.F.R. § 404.1520.

including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.*

## Decision of the Administrative Law Judge

In his decision, the ALJ found that Harlan met insured status requirements through December 31, 2014 and that she met the non-disability requirements for widow's benefits. (R. 15). At Step One, the ALJ found that Harlan had not engaged in any substantial gainful activity since her alleged onset date of September 15, 2010. (R. 16). At Step Two, the ALJ found that Harlan had severe impairments of degenerative disc disease of the lumbar spine, depression, and anxiety. *Id.* At Step Three, the ALJ found that Harlan's impairments did not meet any Listing. *Id.*

The ALJ found that Harlan had the RFC to perform light work with occasional stooping, frequent climbing, balancing, kneeling, crouching, and crawling, and with other limitations related to mental impairments. (R. 18). At Step Four, the ALJ determined that Harlan could not return to past relevant work. (R. 23). At Step Five, the ALJ found that there were a significant number of jobs in the national economy that Harlan could perform, taking into account her age, education, work experience, and RFC. *Id.* Therefore, the ALJ found that Harlan was not disabled at any time from September 15, 2010 through the date of his decision. (R. 24).

## Review

Harlan's first assertion is broadly stated as a complaint that the ALJ's RFC determination was not based on substantial evidence. Plaintiff's Opening Brief, Dkt. #21, p. 4. Her argument appears, however, to be based on the failure of the ALJ to mention the temporary restrictions stated by Dr. Hendricks on September 15, 2010. *Id.*, pp. 6-7. Harlan's second argument again states that the ALJ was obligated to consider the temporary restrictions given by Dr. Hendricks.

*Id.*, p. 7. As part of this second argument, however, Harlan also states that the Appeals Council was obligated to provide an analysis of Dr. Ramos-Fast's opinions, given on September 27, 2012 after the ALJ's May 16, 2012 decision, because those opinions were treating physician opinion evidence. *Id.*, p. 8. The Court finds that, pursuant to Tenth Circuit published precedent, the ALJ's decision is no longer supported by substantial evidence, after considering Dr. Ramos-Fast's Medical Source Statement and the other newly-submitted evidence. *See Martinez v. Barnhart*, 444 F.3d 1201, 1207-08 (10th Cir. 2006). For this reason, the ALJ's decision is **REVERSED AND REMANDED**.

The newly-submitted evidence in the present case consists of Exhibits 17F, treating records from the Claremore Clinic, and Exhibit 18F, the Medical Source Statement from Dr. Ramos-Fast. (R. 537-56). The ALJ had previously admitted medical evidence as Exhibits 1F through 15F at the hearing on March 9, 2012. (R. 32). There is an Exhibit 16F, other treating records from the Claremore Clinic, in the administrative transcript before this Court, but this reviewer has been unable to find any indication of when Exhibit 16F was submitted to the agency. (R. 500-36). Exhibits 17F and 18F were presumably submitted after the ALJ's decision but before the Appeals Council's denial of Harlan's request for review on August 15, 2013, because the denial specifically stated that the Appeals Council had considered them. (R. 1-6).

Before discussing *Martinez*, the Court first notes that this Opinion and Order is not based on the line of cases finding that there is a split of authority of *Martinez* with the unpublished decision of the Tenth Circuit in *Harper v. Astrue*, 428 Fed. Appx. 823, 826-27 (10th Cir. 2011) (unpublished). Several district courts in this circuit have found that *Harper* requires that the Appeals Council expressly evaluate a possible treating physician opinion under the required standards. *See, e.g., Bolden v. Colvin*, 2014 WL 63926 *5 (N.D. Okla.); *Parker v. Colvin*, 2014

WL 4908899 *5-6 (D. Kan.); *Pacheco v. Astrue*, 2013 WL 2030964 *7 (D. Colo.). The Tenth Circuit itself has noted that the issue of whether the Appeals Council is required to explicitly apply treating physician opinion analysis to a possible opinion submitted as additional evidence "does not appear to be settled in this circuit." *Stills v. Astrue*, 476 Fed. Appx. 159, 161 (10th Cir. 2012) (unpublished).

The undersigned need not address the unsettled issue outlined above, because the Tenth Circuit's published opinion in *Martinez* controls the outcome of the present case. The Tenth Circuit stated in *Martinez* that a reviewing court "must consider the entire record, including [the newly-submitted] treatment records, in conducting [its] review for substantial evidence on the issues presented." *Martinez*, 444 F.3d at 1208. After conducting its review of the substance of the issues presented, the *Martinez* court determined that the newly-submitted evidence did not require reversal because the treatment notes would not have altered the ALJ's findings. *Id.*

Applying *Martinez* to the present case, the Appeals Council was not required to give a specific analysis of the new evidence. *Martinez*, 444 F.3d at 1207-08. The Appeals Council did state that the records from the Claremore Clinic were after the relevant time period and therefore did not affect the ALJ's decision. (R. 2). Because the Appeals Council considered Exhibits 17F and 18F as additional evidence, those exhibits are now part of the administrative record for this Court to consider when evaluating the ALJ's decision for substantial evidence. *Martinez*, 444 F.3d at 1208.

The Court is convinced that the newly-submitted evidence tips the balance so that the ALJ's decision is no longer supported by substantial evidence. Even before considering the additional evidence, the Court notes some concerns with the ALJ's decision. First, the ALJ reviewed the evidence of Dr. Hendricks' treatment of Harlan's back issues in 2010, but he failed

to include in his summary any mention of the temporary restrictions given by Dr. Hendricks. (R. 19). Without explicitly deciding the issue, the Court notes that the omission raises a legitimate concern pursuant to Tenth Circuit precedent and the agency's own regulations. *See Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (it is error to ignore evidence that would support a finding of disability while highlighting the evidence that favors a finding of nondisability); 20 C.F.R. § 404.1527(c) ("Regardless of its source, we will evaluate every medical opinion we receive.").

Second, the ALJ noted the March 29, 2011 CT scan of Harlan's lumbar spine, and his summary was fairly accurate. (R. 20, 489). The March 29, 2011 CT scan showed mild multilevel degenerative disk disease, but it also noted "moderately severe degenerative facet arthropathy." (R. 489). To this reviewer, this objective finding appears at odds with one of the next sentences in the ALJ's decision: "Objective findings regarding [Harlan's] degenerative disc disease show only either 'mild' findings with no cord compression or spinal stenosis." (R. 20). This sentence is awkwardly worded, but the ALJ appears to be stating that the objective findings were mild, whereas the 2011 CT scan results included an objective finding of "moderately severe" facet arthropathy. Harlan did not raise any issue with respect to this specific portion of the ALJ's decision, and this Court is not explicitly deciding any issue regarding the 2011 CT scan. The undersigned, however, notes that there is a possible concern that the ALJ interpreted the report as supporting his RFC by impermissibly emphasizing the "mild" objective findings over the "moderately severe" objective findings. *See Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) (ALJ is "not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability").

Third, the ALJ summarized the Physical Residual Functional Capacity Assessment form completed by agency nonexamining consultant Dr. Boatman and stated that he gave Dr. Boatman's opinions great weight. (R. 20, 22). Because Dr. Boatman completed his form on March 22, 2011, he did not have the benefit of the results of the March 29, 2011 CT scan when he formulated his opinions regarding Harlan's functional limitations.[3] There is a possible concern that Dr. Boatman's opinion was not supported by substantial evidence because he did not have available to him important objective findings regarding Harlan's condition. *See Chapo v. Astrue*, 682 F.3d 1285, 1293 (10th Cir. 2012) (appeals court encouraged ALJ on remand to obtain updated exam when opinion of agency examining consultant was "patently stale" in that the relevant medical record had "material changes" after consultant's report).

Thus, if there was no newly-submitted evidence, this reviewer would be concerned by the aspects of the ALJ's decision discussed above. The additional evidence contained in the exhibits submitted to the Appeals Council reinforces these concerns. The newly-submitted evidence included the results of the CT scan completed April 17, 2012. (R. 542-43). These objective findings from 2012 cast more doubt upon the accuracy of the ALJ's characterization of the 2011 CT scan as showing mild results with no stenosis, because the 2012 findings were that Harlan's degenerative facet arthropathy was severe and that there was borderline spinal stenosis at L3/L4. (R. 543). Additionally, Dr. Ramos-Fast submitted the Medical Source Statement giving specific functional limitations that were incompatible with the ALJ's RFC determination. (R. 549-55). The ALJ and Dr. Boatman had no opportunity to review the evidence of the report from the 2012 CT scan or Dr. Ramos-Fast's Medical Source Statement. When considering the entire record,

---

[3] A second nonexamining agency consultant affirmed Dr. Boatman's RFC in a form dated September 28, 2011, and this consultant did note the March 29, 2011 CT scan. (R. 499).

including the newly-submitted evidence, this Court is unable to conclude that there remains substantial evidence supporting the ALJ's RFC determination. *See, e.g., Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003) (newly-submitted evidence called into question ALJ's disposition).

## Conclusion

The Court takes no position on the merits of Harlan's disability claim, and "[no] particular result" is ordered on remand. *Thompson v. Sullivan*, 987 F.2d 1482, 1492-93 (10th Cir. 1993). This case is remanded only to assure that the correct legal standards are invoked in reaching a decision based on the facts of the case. *Angel v. Barnhart*, 329 F.3d 1208, 1213-14 (10th Cir. 2003), *citing Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988).

Based on the foregoing, the decision of the Commissioner denying disability benefits to Claimant is **REVERSED AND REMANDED.**

Dated this 9th day of February 2015.

Paul J. Cleary
United States Magistrate Judge